**UNITED STATES of America, Appellee,**

v.

**Elias Simon MAHANNA, Appellant.**

**No. 71–1533.**

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1972.

Decided June 12, 1972.

Merle L. Silverstein, Clayton, Mo., Rosenblum & Goldenhersh, Stanley M. Rosenblum, Clayton, Mo., for appellant.

Marshall Tamor Golding, Atty., U. S. Dept. of Justice, Washington, D.C., Daniel Bartlett, Jr., U. S. Atty., J. Kenneth Lowrie, Special Atty., U. S. Dept. of Justice, Washington, D.C., for appellee.

Before Mr. Justice CLARK,* VOGEL and LAY, Circuit Judges.

VOGEL, Circuit Judge.

Appellant, Elias Simon Mahanna, along with three others, was charged in an eleven-count indictment with conspiracy, 18 U.S.C.A. § 371, and violations of 18 U.S.C.A. § 2313 (the Dyer Act). Count 1, against all four defendants, charged a conspiracy to violate the Dyer Act, and the remaining ten counts charged substantive violations of that Act. Prior to trial, Mahanna's co-defendants entered guilty pleas to single-count violations and each of them received a suspended sentence and probation. Thereupon, the conspiracy charge and those substantive charges not involving Mahanna were dismissed (Counts 7–11), leaving Counts 2, 3, 4, 5 and 6 which involved Mahanna either singly (Counts 2 and 3) or with others (Counts 4, 5 and 6) to be determined. After an eight-day jury trial, Mahanna was found guilty on all five counts that had charged him with knowingly receiving and concealing stolen motor vehicles moving as interstate commerce, in violation of 18 U.S.C.A. § 2313. He was sentenced to four years' imprisonment on each count, the sentences to be served consecutively, for a total of twenty years.

On this appeal, Mahanna asks that his conviction on Counts 4 and 5 be reversed because of insufficient evidence, and

* Associate Justice of the United States Supreme Court, Retired, sitting by special designation.

that the charges set forth therein be dismissed. Additionally, Mahanna alleges that errors relating to the trial of all five counts necessitate a new trial. We turn first to a consideration of the alleged errors that touch upon all five counts of appellant's conviction.

Mahanna's first contention is that Government Exhibits Nos. 8, 9 and 10 were erroneously admitted into evidence, having been seized by the arresting officers from the trunk of the appellant's car without a warrant in violation of appellant's Fourth Amendment rights. No motion to suppress was made. The facts with reference to the seizure were developed piecemeal during the trial. Exhibit No. 8 was an "Identa-Card" with Mahanna's picture thereon but stating a false name and address—"Philip F. Gholson, Rt. 2, Palamor Park, Freeburg, Illinois". Government's Exhibit No. 9 was a fictitious Missouri driver's license in the name of "Norman J. Turk, Jr." Government's Exhibit No. 10 was a fictitious Illinois driver's license made out to "Philip Fred Gholson". These three exhibits were found in an attache case which had been in the trunk of the car the appellant was driving when he was arrested on May 6, 1970.

Prior to appellant's arrest, Missouri State Highway Patrolmen, in cooperation with United States Postal Inspectors, had placed appellant under surveillance on suspicion of automobile theft. On the day in question, appellant was observed driving a vehicle with an expired Washington, D. C., license plate. He was stopped for this reason. Upon being stopped, appellant was asked to produce his operator's license. He replied that it was in his wallet in the trunk of the car. Appellant then unlocked the trunk and withdrew therefrom an attache case which he began to open. The officers stopped him, obviously fearing that he might be reaching for a weapon. They opened the attache case and handed appellant his wallet, which was in plain view. The inference created from the testimony is that in doing so the officers also observed and

removed Exhibits 8, 9 and 10 from the attache case which were subsequently identified, offered and received over objection at trial. The court, by its rulings on objections, clearly indicated that the opening of the trunk and the attempted removal of the attache case therefrom were purely voluntary on the appellant's part and further that the seizure of exhibits in question was incidental to appellant's arrest and that its rulings would have been the same had a motion to suppress been presented.

Appellant was next asked for the ownership papers for the automobile he was driving. These he could not produce. Appellant was formally placed under arrest, both for driving with an expired license plate and for suspicion of automobile theft. We believe appellant's contention that his Fourth Amendment rights against unreasonable search and seizure to be without merit in light of the facts adduced at trial.

■ Appellant was driving on a Missouri public highway and was under a duty to produce his driver's license at an officer's request. R.S.Mo.1959 § 302.-181(2), V.A.M.S. See Rodgers v. United States, 8 Cir., 1966, 362 F.2d 358, 361, cert. denied, 1966, 385 U.S. 993, 87 S.Ct. 608, 17 L.Ed.2d 454, wherein this court said at page 361:

"We note that Missouri statutes make it unlawful for any person to drive a motor vehicle upon a Missouri highway unless he has a valid operator's license, V.A.M.S. § 302.020(2); that such a license 'shall be carried at all times by the holder thereof while driving a motor vehicle and shall be displayed upon demand of any officer of the highway patrol * * *. Failure of any * * * operator of a motor vehicle to exhibit his license to any of the aforesaid officers * * * shall be presumptive evidence that such person is not a duly licensed * * * motor vehicle operator', § 302.181, par. 2; * * *."

In Rodgers, the patrolmen had information to the effect that a car answer-

ing the description of the vehicle driven by the defendant was stolen. They had sound and substantial reasons for stopping the defendant and initiating the investigation which turned up incriminating evidence. In the instant case, the appellant was arrested for driving a vehicle with an expired license and also for suspicion of auto theft. Exhibits 8, 9 and 10 were apparently in plain view in the attache case when it was opened to obtain appellant's wallet and license therefrom. We have then this situation: (1) the officers had the right to stop the appellant under the suspicious circumstances existing and thereafter require the production of a driver's license. (2) Appellant's driver's license or a substitute therefor was in his wallet in an attache case in the car's trunk. (3) Appellant either voluntarily opened the trunk himself or one of the officers did so with his consent. (4) Appellant reached into the trunk for the attache case, which was closed. (5) Appellant attempted to open the attache case but was prevented from doing so by the officers, who opened it themselves and handed appellant's wallet to him. In doing so, the officers observed and removed from the attache case Exhibits 8, 9 and 10 in question. (6) The officers had a right to be where they were and to do what they did when they observed Exhibits 8, 9 and 10. (7) The officers were not engaged in an exploratory search, but in a situation calling for the application of the plain view doctrine. (8) The seizure of the exhibits was incidental to the arrest of the appellant.

In Harris v. United States, 1968, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067, 1069, the Supreme Court noted:

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

See United States v. Cecil, 8 Cir., 1972, 457 F.2d 1178; United States v. Jones, 8 Cir., 1971, 452 F.2d 884; United States v. Briddle, 8 Cir., 1971, 436 F.2d 4, cert. denied, 1971, 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 24; Searles v. State of Minnesota, 8 Cir., 1970, 428 F.2d 1188, cert. denied, 1970, 400 U.S. 907, 91 S.Ct. 150, 27 L.Ed.2d 145; Fagundes v. United States, 1 Cir., 1965, 340 F.2d 673. Cf. Chimel v. California, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685; Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; United States v. Parham, 8 Cir., 1972, 458 F.2d 438.

We hold that the facts and circumstances surrounding the seizure of Exhibits 8, 9 and 10 fully justified their admission as evidence against appellant.

■ As his next contention, appellant complains that the trial court made prejudicial comments during the course of the trial and in its charge to the jury concerning appellant's failure to testify. Early in the trial, which, as we have noted, lasted some eight days, appellant apparently had some disagreement with his personally retained counsel with reference to the questioning of witnesses. Appellant sought the permission of the trial court to personally participate in the trial and to cross-examine witnesses when he chose to do so. The request was granted. Shortly thereafter the trial court became convinced that the appellant was attempting to testify by introducing statements of fact into his questions. Appellant was called to the bench and admonished as follows:

"The Court: You can ask him whose name was on there first, but if you're going to testify, you're going to have to take the stand. Now, that's what you're doing, in effect, and that's where you may be—the point I'm trying to tell you is you can be sworn and this Court's not trying to walk you into a situation where other evidence may be introduced, but if you persist in—the way to ask this question, Mr. Mahanna—just a minute. The way to ask him is say—just mention this Janice Laberta's name appears there and then hand him the ex-

hibit and ask him to inspect that line and see—ask him: did your name ever appear there. That's the way to do it, and you may do that, but if you go any further in cross-examination and make any statement like you did —

"Mr. Mahanna: I'll stop here.

"The Court: I'm going to stop you. I'm going to administer the oath to you and then you're going to be in a little different situation."

The foregoing was *in the presence of, but out of the hearing of the jury.* Thereafter, the cross-examination of the witness was continued by the appellant as follows:

"By Mr. Mahanna

"Q. Mr. Klingel, the night that I discovered the automobile—I believe it was on May the 19th?

"A. That's correct.

"Q. I called you where? At home?

"A. Yes, sir.

"Q. And I told you what had happened and asked you what?

"Mr. Strachan: Well, Your Honor, the witness is testifying—rather the counsel is.

"The Court: If you want to interrogate this witness, Mr. Mahanna, you may interrogate him. The Court has granted you that right. However, if you propose to offer testimony, I suggest that you take the oath and the witness stand.

"Mr. Mahanna: I'm sorry, Your Honor."

The foregoing *was in the presence and the hearing of the jury.* Thereafter, appellant continued to exercise the privilege granted him by the trial court. Subsequently, the court still found it necessary to admonish the appellant, but such admonitions were issued at the bench out of the hearing of the jury. We get the impression from an examination of the entire transcript that the trial judge was truly trying to be helpful to appellant and sought to explain to him what he could and could not do while interrogating a witness. In fairness, we must say that the appellant indicated an appreciation of the trial court's helpfulness to him in what was to him the strange and difficult position of personally trying at least part of his own case with retained counsel sitting by him. If, however, under these circumstances, the trial court's statement made to appellant in the presence and hearing of the jury that "if you propose to offer testimony I suggest that you take the oath and witness stand" be error, we deem it to be minor and inconsequential error without prejudice to the appellant, particularly in light of the trial court's instructions referred to below.

█ The situation here is not unlike that presented to this court in United States v. Warner, 8 Cir., 1970, 428 F.2d 730, cert. denied, 1970, 400 U.S. 930, 91 S.Ct. 194, 27 L.Ed.2d 191. In *Warner,* after an improper argument by appellant, who was acting pro se, the trial judge said, "I think you should ask questions. If you want to testify later on you may." Additionally, after an improper closing argument by Warner, the prosecuting attorney said, "Most of what you heard in the closing argument on behalf of Mr. Warner and by Mr. Warner, did you hear it from the witness stand?" True, as Judge Gibson noted in his opinion, 428 F.2d at 738:

"Adverse comments by judge or prosecutor upon a defendant's failure to take the stand is a violation of the defendant's rights under the Fifth Amendment. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed. 2d 106 (1965)."

█ We agree, however, with the Fifth Circuit wherein it said in Davis v. United States, 5 Cir., 1966, 357 F.2d 438, 441, cert. denied, 1966, 385 U.S. 927, 87 S.Ct. 284, 17 L.Ed.2d 210:

"The facts and circumstances of each case must be carefully analyzed to determine 'whether the language used was manifestly intended or was of such character that the jury would

naturally and necessarily take it to be a comment on the failure of the accused to testify.' Knowles v. United States, 224 F.2d 168, 170 (10th Cir. 1955); see United States [ex rel. D'Ambrosio] v. Fay, 349 F.2d 957 (2d Cir. 1965)."

See United States v. Porter, 8 Cir., 1971, 441 F.2d 1204, 1216, cert. denied United States v. Harrison, 1971, 404 U.S. 911, 92 S.Ct. 38, 30 L.Ed.2d 184; United States v. Lepiscopo, 5 Cir., 1970, 429 F. 2d 258, cert. denied, 1970, 400 U.S. 948, 91 S.Ct. 255, 27 L.Ed.2d 254.

In *Warner*, Judge Gibson additionally noted, at page 740 of 428 F.2d:

"In light of *Griffin* [1965, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106] and *Curtiss* [United States v. Curtiss, 2 Cir., 1964, 330 F.2d 278] some error has probably been committed in this case by the comments of the judge and prosecutor. But the judge did advise the jury in his charge that no adverse inference should be drawn from defendant's failure to take the stand, and the prosecutor's remarks would have been proper if applied to trained counsel not defending himself. And in any event the remarks made were mild and innocuous. Although we believe the judge and prosecutor must use, in the lawyer's phrase, an excess of caution, in pro se defense cases, we think the statements here were sufficiently unprejudicial and noninflammatory and the evidence was so overwhelming that such error as was committed was harmless."

In the instant case, the trial court instructed the jury as follows:

"In considering whether possession of recently stolen property has been satisfactorily explained, the Jury will bear in mind that in the exercise of Constitutional right, *the accused need not take the witness stand and testify*. Possession may be satisfactorily explained through other circumstances, other evidence independent of any testimony of the accused." (Emphasis supplied.)

The trial court also stated to the jury in its charge:

"The Jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence."

It further charged:

"This is a criminal case, as you know. The burden to make out the guilt of the Defendant on trial in this case is upon the Government. That burden the Government assumes in the beginning and carries throughout to the end, until it has met it by showing to you the guilt of the Defendant beyond a reasonable doubt. *The law never imposes upon a Defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.*" (Emphasis supplied.)

We have examined the trial court's entire charge to the jury and find it meticulously correct, particularly as to burden of proof, presumption of innocence and the lack of necessity of the accused to testify or produce witnesses. The complained-of statement in front of or within the hearing of the jury might best have been said in chambers or at the bench out of the hearing of the jury. Nevertheless, we do not find that it constituted prejudicial error in light of the standards enunciated in *Warner* and *Davis.*

Appellant also challenges additional statements of the trial court in its charge to the jury, as well as the admission into evidence of various handwriting samples of the appellant and certain photographs of him. We have examined and considered these alleged errors and find them to be without merit.

■ Lastly we consider Mahanna's contention that his convictions on Counts 4 and 5 should be reversed because of insufficient evidence to support the charge that he received and concealed the vehicles described in those two counts. With this contention we agree.

Count No. 4 charged that Henry C. Midden, a co-defendant in the original indictment, and Mahanna did willfully and knowingly receive and conceal a certain 1969 Cadillac which was moving in interstate commerce from New York City, State of New York, to St. Louis, State of Missouri, and that they knew the motor vehicle to have been stolen. It should be remembered here that Count 4 was dismissed as to Midden, leaving Mahanna as the sole person charged in Count 4. Additionally, it should be pointed out that in the conspiracy count, which was also dismissed, it was charged that as part of the conspiracy Mahanna would provide bills of sale, former titles and title applications for the vehicles that were to be stolen for defendant Midden. During the trial an official of the office of the Illinois Secretary of State identified various documents relating to the vehicle described in Count 4. The documents were counterfeit Massachusetts title papers for this vehicle issued in the name of "Alexander Rosen". Based on such documents, an Illinois title was issued to "Rosen". The vehicle was then sold by Midden to John W. McGraw. McGraw then obtained a Missouri title for the vehicle in the names of his sister and brother-in-law. From them title passed to Mr. and Mrs. Milford Potter, from whom the vehicle was recovered by the Missouri State Highway Patrol on September 11, 1970.

The only evidence linking Mahanna to the various transactions involving the vehicle described in Count 4 is the testimony of expert witnesses indicating that Mahanna may have signed the name "Alexander Rosen" to the fraudulent title document, and that an insurance claims adjuster paid a claim relating to this vehicle to "Elias Mahanna and Alexander Rosen". The address of Mahanna was shown to be the same as that of "Rosen".

Similarly in Count 5, a 1969 Cadillac automobile was stolen from its owner on October 1, 1969. A counterfeit New York registration certificate in the name of "Kenneth Bennett" was used to obtain a fraudulent Illinois title in the same name. The vehicle was then transferred to Larry Ancell, who applied for a Missouri title. The vehicle in question was recovered from Ancell by the Missouri State Highway Patrol.

Here, again, the only evidence linking Mahanna with the Count 5 violation is through handwriting experts who testified that the bill of sale purportedly drawn and signed by "Bennett" transferring the vehicle to Ancell was probably written by Mahanna. Additionally, Ancell, who was acquainted with Mahanna, testified that he had purchased the vehicle after negotiating with Mahanna on the telephone, but that the vehicle was delivered to him by another. The check written by Ancell to cover the purchase price was drawn to the order of "Bennett" and mailed to Mahanna.

■ We realize, of course, that when sufficiency of the evidence is in issue on appeal,

"* * * we must, as an appellate court, view that evidence in the light most favorable to sustaining the jury verdict, and we accept as established all reasonable inferences that tend to support the jury's determination. United States v. Lodwick, 8 Cir., 1969, 410 F.2d 1202; Kayser v. United States, 8 Cir., 1968, 394 F.2d 601, cert. denied 393 U.S. 919, 89 S.Ct. 250, 21 L.Ed.2d 206." United States v. Briddle, supra, 430 F.2d 1335, at 1337–1338.

The elements of proof required for conviction under 18 U.S.C.A. § 2313 were set out by this court in United States v. Brady, 8 Cir., 1970, 425 F.2d 309, at page 311, wherein Judge Heaney stated:

"To obtain a conviction under § 2313, the government must prove that: (1) the motor vehicle involved was stolen; (2) the defendant knew that the motor vehicle had been stolen; (3) the defendant concealed the motor vehicle; (4) the motor vehicle involved was moving as or was a part

of interstate traffic at the time of the defendant's activities."

Cf. Kramer v. United States, 8 Cir., 1969, 408 F.2d 837.

The government's proof as to Counts 4 and 5 fails to meet these standards and was insufficient to support the jury verdicts of guilty as to such counts. All that the government established is that Mahanna may have been guilty of procuring false title documents for the vehicles described in Counts 4 and 5. This falls far short of establishing either receiving or concealing, although there can be little question but that Mahanna's procuring and providing false title documents for the vehicles described in Counts 4 and 5 constituted a violation of the law of the State of Missouri punishable by a fine or imprisonment. See R.S.Mo.1959 § 301.420, V.A. M.S. Proof of a violation of such a state law is, however, insufficient to establish a viable nexus upon which a conviction for Dyer Act violation can be sustained. Actual or constructive possession is required to support the charge of receiving and concealing in Dyer Act cases.

The evidence produced by the government in Counts 2, 3 and 6 highlights the deficiencies of proof in Counts 4 and 5. Count 2 involved a 1969 Cadillac which Mahanna was driving at the time of his arrest. Count 3 involved a 1968 Cadillac which Mahanna had personally traded in to a Cadillac Dealer in Clayton, Missouri, as part payment on a new Cadillac. In Count 6 the stolen 1968 Cadillac was traded back to one Robby A. Robinson, who had purchased the vehicle for cash from "Morris Goldberg", who was accompanied by appellant and who accepted the cash payment. It is undisputed that appellant was in the vehicle at the time it was brought to Robinson for sale.

Thus in the other three counts, 2, 3 and 6, the evidence clearly established that Mahanna had actual or constructive possession of the vehicles which he was charged with receiving and concealing. No such connection exists as to Counts 4 and 5. It should be noted here also that as to Counts 7, 8, 9, 10 and 11 Mahanna was not named as a defendant-participant, although such counts involved charges against Mahanna's co-defendants, involved Cadillac automobiles and separate violations of the Dyer Act.

The deficiencies of the government's case are further highlighted by an analysis of the cases relied upon by it to support the proposition that the evidence was sufficient to sustain the convictions as to Counts 4 and 5.

The prosecution places much reliance upon the definition of constructive possession espoused by the Sixth Circuit in United States v. Wolfenbarger, 6 Cir., 1970, 426 F.2d 992, 994–995, wherein the court said:

"A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and intention at any given time to exercise dominion and control over a thing is then in constructive possession of such property."

The facts in *Wolfenbarger* are, however, inapposite. There, FBI agents had placed the stolen car in question under surveillance. Defendant was arrested next to the stolen vehicle and admitted possession of the key to the vehicle. Defendant contended that he had received the key from another and was about to move it at the other's request.

Indeed, all of the cases relied upon by the government contain a much greater showing of possession than is demonstrated by the proof relating to Counts 4 and 5.[1]

[1]. See, United States v. Brady, supra (defendant admitted possession and was seen on two different occasions driving the vehicle); United States v. Powell, 6 Cir., 1970, 420 F.2d 949, 950 ("Concealing a stolen automobile requires some overt act over and above mere open possession, even if that possession be linked with knowledge that the car was stolen."); Hale v. United States, 5 Cir., 1969, 410

As we have already noted, the evidence was amply sufficient to sustain a conviction on each of Counts 2, 3 and 6. There, possession of the vehicles was convincingly linked to Mahanna. No such evidence was offered or received as to Counts 4 and 5. The government may not bootstrap the proof as to Counts 4 and 5 by use of the stronger evidence adduced with respect to the other counts of the indictment. Each count is a separate charge and a separate case and each count must stand on its own proof. Cf. United States v. Jensen, 8 Cir., 1972, 462 F.2d 763; United States v. Kelton, 8 Cir., 1971, 446 F.2d 669.

The convictions on Counts 4 and 5 are reversed with directions to enter an order of acquittal. The convictions on Counts 2, 3 and 6 are in all things affirmed.

F.2d 147, cert. denied, 1969, 396 U.S. 902, 90 S.Ct. 216, 24 L.Ed.2d 179 (defendant called police following accident involving stolen vehicle driven by defendant's wife, admitting possession, and later tried to contradict statement when police discovered the vehicle to be stolen); Babb v. United States, 8 Cir., 1965, 351 F.2d 863 (stolen vehicle recovered from defendant). See, also, United States v. Briddle, supra, 430 F.2d 1335; Kramer v. United States, supra, 408 F.2d 837.