STATE of Missouri, Respondent,

v.

Charles Cecil SHIELDS, Appellant.

No. 50761.

Supreme Court of Missouri,

Division No. 1.

June 14, 1965.

Motion for Rehearing or to Transfer to Court En Banc Denied July 12, 1965.

Norman H. Anderson, Atty. Gen., Jefferson City, Selden M. Jones, Special Asst. Atty. Gen., Kansas City, for respondent.

Paul S. Brown, St. Louis, for appellant.

HENLEY, Judge.

By an information substituted for an indictment defendant and one Robert Krenning were charged with robbery in the first degree by means of a dangerous and deadly weapon. Sections 560.120 and 560.-135. (All references to statutes and rules are to RSMo 1959 and V.A.M.S., and V.A.M.R., respectively.) The information also charged defendant under the Habitual Criminal Act with convictions of prior felonies. Section 556.280. A severance was granted Krenning, and upon separate trial a jury found the defendant, Shields, guilty of robbery in the first degree by means of a dangerous and deadly weapon. The court found that defendant had been convicted of prior felonies and assessed his punishment at imprisonment in the penitentiary for forty years. His motion for new trial was overruled, he was sentenced in accordance with the punishment assessed, and he appeals.

Defendant assigns as error argument of the state's attorney described by defendant as a reference to his failure to testify, and the admission of certain testimony of a police officer. A brief description of the evidence will suffice.

On Saturday afternoon, February 2, 1963, in the course of about five minutes, two men held up James Otto Laudel in the basement office of Laudel Realty Company at 3616 Castleman Avenue in St. Louis. The defendant was identified by Laudel at the police station, and later at the trial, as being the older of the two and the other, the younger man, was identified by defendant to police officers as Robert Krenning. Under compulsion of a .45 automatic pistol pointed at him by defendant and the announcement that "this is a holdup", Laudel permitted the younger man to take his

wallet containing approximately $18. Being dissatisfied that a search of the office had not produced additional money, defendant took Laudel's Elgin wristwatch from the latter's wrist and then "slugged" Laudel twice with the pistol knocking him into a corner across the room. As Laudel regained consciousness, the building janitor walked into the office and was beaten into unconsciousness with the pistol by the younger man. In one of the blows to the janitor's head a plastic grip of the pistol handle was broken, the pieces falling to the floor. These pieces were recovered by police and identified as fitting together and belonging to the pistol found in the possession of one Charles Dacus on his arrest the next day. Defendant and Krenning were also arrested the next day. At his arrest, defendant had on his wrist the Elgin watch taken from Laudel during the robbery. In a statement to witness, Joseph Grau, a detective of the St. Louis Police Department, defendant admitted the robbery and identified the pistol found in the possession of Dacus as that used in the robbery. Defendant, in his statement to the detective, identified Krenning as one of his co-conspirators and his accomplice at the Realty Company office, and he identified Dacus as the accomplice who drove him and Krenning to the office and in whose automobile they left the scene.

Defendant did not testify, nor was evidence offered in his behalf.

Two of the four points relied on by the defendant are that the court erred in permitting police officer Lawrence Ventmiglia to testify, over objection, that: (1) he arrested Robert Krenning, and, (2) he arrested Charles Dacus at his home and found a .45 automatic pistol with three live bullets in Dacus' bedroom. He says that evidence of these arrests and the finding of those articles in Dacus' room was inadmissible because there was no evidence to connect Krenning, or Dacus and the pistol and bullets to the defendant or the robbery. The two points are presented to-

gether in defendant's argument and we too find it convenient and logical to treat the points in the same manner.

■ Evidence of the arrest of those defendant has identified as his accomplices and of the recovery of the pistol used in the robbery from one of those accomplices is, of course, admissible. State v. Johnson, Mo., 286 S.W.2d 787, 792 [9]. Evidence of his own statements to the detective refute his reasons for his objection to this testimony.

The two remaining points of error are closely related and may be treated together, for disposition of the first will obviate a discussion of the second. The first of the two, in the words of defendant, is: "The trial court erred in refusing defendant's request for a mistrial when the State's Attorney referred to defendant's failure to testify by telling the jury there was one other witness (referring to defendant) whom they could test by the standards in Instruction No. 3 the credibility of witnesses instruction." The second of the two, and his last point, is that this court should invoke the plain error rule (Criminal Rule 27.20(c)) if we hold that this argument of the state's attorney was a reference to defendant's failure to testify but find that the point was not preserved for review, or defectively raised or preserved. While the objection was not a model, we deem and treat it as sufficient to preserve the alleged error for review.

That portion of the state's attorney's closing argument objected to by defendant is: "There is one other witness, one strictly important witness, who has told you about this robbery and explained to you how it was committed, and again, you can say, 'I will test this witness by the standard which you are to apply through the Court's Instruction No. 3;' and those words are important right here—he says, through Officer Grau: 'I held up James Laudel. I used that gun. I took that watch'."

Instruction No. 3 is the ordinary credibility of witnesses' instruction stating, in that part pertinent to defendant's point and contentions, that in determining the credibility of a witness and the weight to be given his testimony the jury may take into consideration the witness' demeanor on the stand and the probability or improbability of his statements.

■ Section 546.270 and Criminal Rule 26.08, in identical language, state that: "If the accused shall not avail himself * * * of his * * * right to testify * * * it shall not * * * be referred to by any attorney in the case * * *." The Rule and the Statute are mandatory. State v. Shuls, 329 Mo. 245, 44 S.W.2d 94, 97 [8]. Counsel (and the court) should follow the practice of rigidly refraining throughout the trial from any reference to a defendant's failure to testify. State v. Denison, 352 Mo. 572, 178 S.W.2d 449, 455 [13]. This court has said that if counsel for the state in fact, either directly or indirectly, refers to the defendant's failure to testify he is entitled to a new trial. State v. Shuls, supra; State v. Hayzlett, Mo., 265 S.W.2d 321, 323 [3, 4]. However, the safeguards of the Rule and the Statute are limited as they are modifications of the common law and we ought go no further in their construction than their express terms provide. State v. Janes, 318 Mo. 525, 1 S.W.2d 137, 138 [3]; State v. Greer, 321 Mo. 589, 12 S.W.2d 87, 90 [6]; State v. Lindner, Mo., 282 S.W.2d 547, 550. In State v. Lindner, supra, l. c. 550, we said, "The key words of the statute, * * * are 'accused' and 'testify,' and the ultimate test of whether the prohibition has been violated is whether the jury's attention was called to the fact that the accused did not testify."

Defendant contends and argues that the state's attorney made direct reference in his argument to defendant's failure to testify by calling the defendant a witness and stating that the jury could test defendant as a witness by the standards of instruction

No. 3, although defendant did not take the stand and testify.

■ Does the description of defendant as a "witness", in the sense that word is used in the argument, constitute a direct reference to defendant's failure to testify? We think not. Or, does this description constitute such indirect reference thereto that it was reasonably apt to have directed the jury's attention to the fact he did not testify? Again, we think not. The argument pointed to what defendant *did* say, not to what he *did not* say or had failed to say and not to the fact he did not testify. The argument was a reference to his admissions as a part of the strength of the state's evidence against him; not to the weakness of his defense. The state's attorney did not say the words of defendant's confession stood uncontradicted by him, or that defendant had failed to take the stand to deny his confession or the charges against him. In State v. Brugioni, 320 Mo. 202, 7 S.W.2d 262, 264 [8], the prosecuting attorney, in discussing the testimony, referred to statements made by defendant to the Sheriff when the latter was searching his premises. After stating what the defendant had said, he remarked, "And he (referring to the defendant) don't deny that." We held: "This, under the most strained construction, does not violate the statutory rule * * * prohibiting a reference to the defendant's failure to testify. It was simply a fair deduction drawn from defendant's voluntary statements * * * made in the presence of the sheriff * * *." This more closely approached a direct reference to the prohibition of the Statute and Rule than did the argument with which we are now concerned. Also, see: State v. Boyer, 342 Mo. 64, 112 S.W. 2d 575, 581 [12]. As against the contention that this was a direct reference to the defendant's failure to testify, we hold these remarks of the state's attorney were merely a fair argument of the testimony, a fair argument of a significant part of the testimony of Detective Grau.

■ Too, this portion of the argument is taken out of context by the defendant. Viewed in proper perspective any intent to call attention indirectly to defendant's failure to testify is dispelled. The objected-to remarks came within a few seconds of the close of the argument. Immediately preceding them the state's attorney had adopted the device of referring to inanimate articles as "witnesses" against the defendant. Using the word "witness" as a figure of speech, he had referred to the pistol and the broken plastic pieces obviously fitting together and to the pistol handle, as well as Laudel's watch found on defendant's wrist, as being "witness[es] which speak to you * * * in language that is very difficult to disbelieve * * *." Continuing in that manner, counsel referred to what "* * * he [defendant] says through Officer Grau: 'I held up James Laudel. I used that gun. I took that watch.'" We consider that even if this argument could be described accurately as an indirect reference, it was without any calculated intent to cross the prohibited line; *and* more important and more to the point, the reference was so remote as not reasonably apt to have the effect of calling the attention of the jury to defendant's failure to testify.

■ "Any argument by a state's attorney urging the cogency and compelling force of the state's evidence and a conviction, especially in a case in which there are no witnesses and no evidence on behalf of the accused, may cause the jury to exercise their function of reasoning upon the evidence and finally to observe the apparent fact that the accused not only has no witnesses and no evidence but that he did not testify. But the arguments of state's attorneys under those circumstances do not constitute an infringement of the prohibition of the statute." State v. Hayzlett, Mo., 265 S.W.2d 321, 325. We might well add to the quotation: any reasonably intelligent jury of today will observe the evident fact that the defendant has chosen

not to testify, even though the choice goes unmentioned in argument.

In State v. Heissler, Mo., 324 S.W.2d 714, 716 [6], the defendant contended that an alibi instruction given by the court was erroneous because it amounted to a comment on his failure to testify. He pointed to these words of the instruction: "* * * he says he was not present at the time and place of the commission of the alleged crime, but was elsewhere", and argued that the use of the words, "he says he was not present", when, in fact, he did not testify, invited the attention of the jury to his failure to testify. The instruction in Heissler, using words strikingly similar to those used in argument by the state's attorney in the instant case and presenting the same question, was held by this court not to be a reference to defendant's failure to testify. We again so hold.

An examination of the record as required by Rule 28.02 discloses no error.

The judgment is affirmed.

All concur.