**STATE of Missouri, Respondent,**

v.

**Firman Bill GRAY, Defendant.**

**No. 35177.**

Missouri Court of Appeals,
St. Louis District,
Division Two.

Dec. 11, 1973.

Daniel B. Hayes, Asst. Public Defender, Clayton, Robert E. Heisler, Legal Aid Society, St. Louis, for defendant.

George R. Westfall, Asst. Pros. Atty., Clayton, for respondent.

McMILLIAN, Judge.

This is an appeal by defendant, Firman Bill Gray from a judgment entered by the Circuit Court of St. Louis County on a jury verdict of guilty to the charges of Robbery in the First Degree by means of a Dangerous and Deadly Weapon, Attempted Robbery in the First Degree by means of a Dangerous and Deadly Weapon, and Assault with Intent to do Great Bodily Harm with Malice Aforethought. Defendant was sentenced to serve a term of thirty years, fifteen years, and thirty years respectively in the custody of the Department of Corrections. Each Count was to run concurrently.

Defendant contends that the court erred in the following respects: (1) failure to have counsel present at the pre-informational lineup; (2) failure to suppress evidence obtained as a result of an unreasonable search and seizure; (3) failure to grant a new trial for "plain error" as a result of the court's comment upon defendant's failure to testify; (4) admission into evidence of exhibits which were inflammatory and prejudicial; and (5) the giving of erroneous and misleading instructions to the jury. We find that the trial court's comment on defendant's failure to testify was "plain error" and accordingly reverse.

On January 8, 1972, at about 1:15 A.M., as Robert E. Hitchcock and Frankie Ray Bush were leaving Yacovelli's Restaurant located in St. Louis County, they heard a gunshot in the parking lot adjoining the restaurant. When they turned around, they saw two men approaching them. Both appeared to be black, of different heights, and the taller man had a gun. Both men approached the victims face to face, encircled them, and subsequently stood behind them throughout most of the encounter. The taller man asked the victims for their wallets; Mr. Bush complied, but Mr. Hitchcock hesitated and was shot in the hand. Thereafter the two men backed off and ran. Mr. Hitchcock ran inside the restaurant to call the police. As Mr. Bush recovered Mr. Hitchcock's wallet in the parking lot, he noticed a white 1962 Ford Convertible pull away. Immediately Bush ran inside and informed Hitchcock, who then relayed the description of the suspects and the car to the police.

A few minutes later, Patrolman Ricks received a radio dispatch from the Kirkwood Police Department which stated: "A holdup; two colored males wearing leather jackets and skinner hats and sunglasses . . . on foot . . ." Shortly after receiving the dispatch Patrolman Ricks passed a white 1962 Ford Convertible that was going in the opposite direction. After he turned around to pursue the white convertible and while in the process of pulling the car over, he received another message that there was a car involved in the holdup and that car fitted the description of the white Ford Convertible he had stopped.

In the car were four occupants. After the driver was ordered to get out of the car and placed under arrest, Patrolman Ricks received an assist from Sergeant Harris. Officer Harris' search revealed some money, a hatchet, guns, a hammer, and one glove. Later the car was taken to the police garage where a more thorough search was conducted.

Later that morning, defendant appeared in two lineups and was viewed by Bush

and Hitchcock. Nine men were in the lineup, and each was required to say, "My name is John Doe." There was some hesitancy about the identifications; and thus, the second lineup was held. Between the first and second lineup some discussion, outside the viewing room, took place between the victims and the police.

Prior to the lineup, Gray requested and was permitted to telephone the Chief Public Defender of St. Louis County. After a short conversation, the Public Defender advised him that his attendance would not be helpful, and if it was alright with defendant he would not attend. Defendant replied, ". . . [D]on't bother to come down." Later defendant was identified by both victims as the smaller man who had participated in the robbery.

■ Defendant's contention that he had a right to counsel at his pre-informational lineup cannot be sustained. He relies heavily upon United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) and attempts to find support for his position in the holding of Arnold v. State, 484 S.W.2d 248 (Mo.1972). In both *Wade* and *Gilbert* the lineup took place after indictment, while in our case the lineup was held before an information was founded. Moreover, in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the U.S. Supreme Court held that a police station "show up" that took place *after petitioner's arrest but before he had been indicted* or otherwise formally charged was not a critical stage of a criminal prosecution at which petitioner had a constitutional right to counsel. The court also held that the victim's testimony at trial describing his "show up" identification of defendant, who was not represented by counsel at the show up, was admissible. Furthermore, in Arnold v. State, supra, our own Supreme Court has said that the right to counsel attaches at the time the complaint is filed and the warrant is issued. So, too, in State v. Walters, 457 S.W.2d 817, 819

(Mo.1970), the court specifically held that a defendant's lack of counsel at lineup did not deprive him of his right to counsel or due process where defendant had not been indicted and no information had been filed against him prior to the time of lineup. Consequently, this point is resolved against the defendant. While the writer has resolved this issue against defendant, it is my personal opinion, that if *Wade,* supra; *Gilbert,* supra, and *Arnold,* supra, have any validity for the reasons designated therein that after indictment or filing of an information, or after filing of a complaint and a warrant issued, the proceedings have become adversary and hence "a critical stage" of the proceedings; then on principle the same reasons should obtain and carry over, absent exigent circumstances to a lineup conducted after arrest especially when the investigation has focused upon the arrestee as the suspect. Once he has been identified by the victim, pre-informational or post-informational, to a large extent he has had his trial. While I recognize society's need for early detection of criminal activities, I fail to see in what significant way its societal needs are abridged by permitting the accused, absent exigent circumstances, to have counsel present at this critical juncture—otherwise, counsel appointed at some later stage is completely at a loss to properly reconstruct what transpired at the initial confrontation so as to meaningfully be of assistance to his client.

■ Defendant also contends that the out-court and in-court identifications should have been suppressed because he was denied a fair lineup under the "totality of the circumstance." Our review of the record shows that the lineup was held four hours after defendant's arrest; that defendant and three other suspects were placed in a lineup with five other men; all nine were black males; and that defendant and his co-defendant Tommy Berry were the only two who wore undershirts for upper garments. There is no evidence that defendant in any way was singled out by

the police during the lineup in a manner that would be prejudicial. Nor, do we find anything prejudicial because defendant's upper garment was an undershirt; if anything, it was favorable to defendant since the assailants wore shirts and jackets. In State v. Boothe, 485 S.W.2d 11 (Mo. banc 1972), the court held that each case must be considered on its facts and evaluated in light of the totality of the surrounding circumstances. In each case three points are to be considered: (1) the presence of an independent source of identification; (2) the absence of any suggestive influence by others; and (3) positive courtroom identification. Using these criteria as a yardstick, we find that the victims had an independent basis for identification, since they were able to see their assailants as the assailants approached and spoke to them. So, too, neither the police nor anybody else indicated to the victims by any means whatsoever which of the nine subjects were the suspects. And, finally, each victim made an independent positive identification of the defendant as one of the two people who robbed them. Consequently, this claim of error is unavailing.

■ Likewise, we find that defendant's claim that the search and seizure of the automobile was violative of the Fourth Amendment of the U.S. Constitution and Art. I, Sec. 15 of the Missouri Constitution, V.A.M.S., to be without merit. The evidence shows that the arresting officer not only had knowledge that a crime had been committed and a description of the assailants, but also a description of an automobile used by the assailants to leave the scene. Thus, probable cause having been established, the officer was permitted to conduct a warrantless, contemporaneous search as an incident to a lawful arrest— not only to recover the fruits of the crime and instrumentalities used to perpetrate it, but also any weapons for their own protection. In any event, since the officer had a right to be where he was when he discovered the items, anything discovered came under the "plain view" doctrine. That is,

seizable items which inadvertently come into view of the officer *lawfully* searching in connection with crime or for another purpose; or, who otherwise has a right to be where he is, may be retained and used in prosecution of the crime to which they relate. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

■ Defendant's most serious complaint of error centers around an inquiry directed by the trial court to the defendant in the jury's presence:

"THE COURT: Mr. Hayes.

"MR. HAYES: Ready, Your Honor.

"THE COURT: You may proceed. (Court to defendant)

Will you be sworn, sir; are you going to testify?"

It is contended that such a question, combined with defendant's answer (a refusal) in front of the jury constituted a direct comment by the trial judge on defendant's failure to testify. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); State v. Barker, 399 S.W.2d 1 (Mo.1966); State v. Shields, 391 S.W.2d 909, 912 (Mo.1965) and United States v. Warner, 428 F.2d 730 (8th Cir. 1970). Secondly, if it be declared that such an inquiry in the presence of the jury is a comment on defendant's failure to testify, can the error be taken advantage of under our "plain error" rule—Rule 27.20(c), V.A.M. R.?

In Griffin, supra, the prosecutor and the trial court commented on Griffin's refusal to testify in the closing argument and in instructions respectively. The U. S. Supreme Court held that comment by the prosecutor or the trial court on the failure of the accused to testify constituted reversible error.

Both our statute § 546.270, RSMo 1969, and Rule 26.08, V.A.M.R., reflect the holding of the *Griffin* case; i. e., the defendant's failure to testify shall not prejudice him, nor shall any reference to defendant's

failure to testify be made by any attorney in the case.

In State v. Barker, 399 S.W.2d (Mo. 1966), the court stated that the purpose of our statute and rule was to keep absolutely from the jury any reference to the constitutional right (Const.Mo.1945, Art. I, Sec. 19, V.A.M.S.) against self-incrimination. In State v. Shields, supra, quoting from State v. Lindner, 282 S.W.2d 547, 550 (Mo.1955), it was said:

> " 'The key words of the statute . . . are "accused" and "testify", and the ultimate test of whether the prohibition has been violated is whether the jury's attention was called to the fact that the accused did not testify.' "

In United States v. Warner, 428 F.2d 730 (8th Cir. 1970), the *pro se* defendant contended that reversible error was committed when both *the trial judge and the prosecutor* referred, at least by inference, to Warner's failure to take the stand in his own defense. While in the process of questioning a witness, Warner committed frequent procedural errors. At one point, after an objection by the prosecuting attorney to Warner's improper argument with the witness, the trial judge said, ". . . 'I think you should ask questions. If you want to testify later on you may' . . ." It was this comment coupled with another comment by the prosecutor, which Warner claimed violated his constitutional rights. Yet the Circuit Court of Appeals did not consider the judge's statement to be sufficiently prejudicial to warrant a reversal, because the trial judge advised the jury that no adverse inference should be drawn from the defendant's failure to take the stand.

Here, however, neither a curative charge was given nor requested. Nor, as in the Warner case can we say that circumstances invited the judge's comment. It cannot be doubted that once the State's case was concluded for the judge to turn to defendant and to make the inquiry he did in the presence of the jury at that point the jury's attention was focused upon the fact that the defendant was not going to testify.

The effect of the court's remarks are exacerbated by the fact they were made immediately after a recess; if necessary, the matter of whether defendant would testify could have been discussed during recess. And although defendant's counsel was before the Bench, the remarks were directed to the defendant highlighting their effect. Consequently, in our opinion, this inquiry even though inadvertently made, transgressed our statute, our rule, and defendant's constitutional right against self-incrimination.

But our inquiry cannot stop here because the record shows that defendant neither made an objection to the court's comment nor preserved the alleged error in his motion for a new trial. However, defendant argues that we should hold pursuant to Rule 27.20(c) that the trial judge's comment was "plain error." Conversely, the State argues that Rule 27.20(c), V.A.M.R., should not be invoked unless there is a sound, substantial manifestation and a strong, clear showing that injustice or a miscarriage of justice will result. State v. Carpenter, 436 S.W.2d 748 (Mo.1969).

The Carpenter case, which merely states the general rule, does not address itself to the problem under consideration. Yet it does posit that Rule 27.20(c) is not a general catch-basin for all trial errors so as to make shambles of time-honored and tested, orderly trial and appellate procedure. In our case, defendant was defending himself *pro se* when the judge's inquiry was made. Neither he nor the attorney sitting with him took an exception to the judge's conduct.

■■ The State has also cited for support of its position State v. Curtis, 324 Mo. 58, 23 S.W.2d 122 (1929); State v. Keller, 344 S.W.2d 65 (Mo.1961) and State v. McCullough, 411 S.W.2d 79 (Mo.1967). None of the cases are helpful, and each is

distinguishable in that each involved remarks made by the trial court on testimony given before the court. Here, the judge's inquiry, if held to be harmless error, aborts the obvious intent of both our statute and our rule. While the Warner case may be persuasive, we choose not to follow its rationale. Because in our opinion, where a direct reference is made by either the trial judge or the prosecutor, contrary to the proscriptions of our Missouri Constitution and a statutory rule, the only way to cure such a transgression is to abort the trial. Thus if the error is curative by an instruction to the jury to disregard the comment, then reason would seem to indicate it was not such "plain error" as to require a reversal. Where no objection is made to a defendant's failure to testify or a motion for a mistrial is requested, such an allegation of error may be taken advantage of under our "plain error" rule. Therefore, we hold under the circumstances of this case, the inquiry made by the judge in the presence of the jury constituted "plain error." This for the reason that the right of self-incrimination sought to be protected by both the statute and the rule is fundamental to our system of justice. Accordingly, we rule this issue in favor of the defendant.

We have reviewed the record, read the briefs and find that no prejudicial error resulted from the reception of the exhibits into evidence. Nor do we find any prejudicial error in the instructions. However, on retrial any testimony or exhibits pertaining to the meat cleaver and the pick axe will be excluded unless the State can present to the trial court some other theory of their relevance other than the fact that they were found in the automobile when it was stopped.

Judgment reversed and remanded for a new trial.

CLEMENS, Acting P. J., and GUNN, J., concur.