For the reason stated, the appeal is dismissed.

All concur.

STATE of Missouri, Plaintiff-Respondent,

v.

William REYNOLDS,
Defendant-Appellant.

No. 36949.

Missouri Court of Appeals,
St. Louis District,
Division Three.

April 13, 1976.

James C. Jones, III, Robert C. Babione and Christelle Adelman Adler, Asst. Public Defenders, St. Louis, for defendant-appellant.

Brendan Ryan, Circuit Atty., and Thomas C. Muldoon, Asst. Circuit Atty., St. Louis, John C. Danforth, Atty. Gen., Preston Dean, Timothy J. Verhagen, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

SIMEONE, Presiding Judge.

Defendant-appellant, William Reynolds, was found guilty by a jury of burglary, second degree and sentenced by the circuit court of the City of St. Louis under the Second Offender Act to six years in the department of corrections. §§ 560.045, 556.280, RSMo 1969. He appeals. We affirm.

There is no need to detail all of the facts, since the appellant does not question the sufficiency of the evidence but raises only two points on this appeal. We shall only state those facts necessary for the disposition of the points raised. Appellant urges that the cause be reversed and remanded because the trial court erred (1) in commenting on his constitutional right to remain silent in front of the jury and (2) in granting the state leave to amend the information during trial.

The facts: On the evening of September 14, 1974, the assistant manager of the A & P Store at 2718 South Grand closed the store at about 10:00 p. m. He locked the front doors and checked the rear storage areas of the A & P building. About 1:15 a. m. on September 15, 1974, three individuals—John McCann, Wallace (Sonny) Alt and McCann's younger brother—were driving east on Magnolia and were turning right onto Grand when McCann "heard a clicking sound like twisting metal"—"a sharp sound." As he was passing directly at the side of the A & P store, he saw "two individuals crouched down low inside the back area, one with a metal bar in his hand and saw one push the door open." The other occupant of the automobile, Mr. Alt, heard "[a] metal smack against metal." He saw "three males going towards the first door and one putting his hand up and that was it . . . ." "One had his hand on a metal rack across the door." After this, the young men traveled to Grand and Arsenal, a few blocks away, and called the police.

The police came. Officers Al Berberich and David Durney were two of the first to arrive. They proceeded to enter the front door; "the front door was ajar. You could see the bolt sticking out and the door was partially open." As they approached the counters, they observed "subjects running down the aisle to the back." "We saw him run to the rear . . . ." " . . .

There were two subjects hiding behind some boxes, back here (indicating) . . ." There was another man located in the corner of another area. One of the two men located in the rear of the store was the appellant. Appellant was arrested and subsequently charged with burglary, second degree.

During the trial, and when Officer Berberich was on the stand, the following occurred:

"Q (By [Assistant circuit attorney]) This is when you took into custody a man by the name of Reynolds? A. Yes.

Q Do you see him in the courtroom? A Yes.

Q Will you point him out?

A Sitting right next to that lady.

Q Can you tell me, Officer, to the best of your recollection, how he was dressed that night?

A He had overalls on and all had gloves.

[Assistant public defender]: I object to that statement as being irrelevant as to anyone else involved in this.

THE DEFENDANT: She should object to the lie that was just told.

THE COURT: You should remain quiet, sir.

THE DEFENDANT: Are you going to permit him to sit up there and tell all these lies?

THE COURT: I suggest that you discuss matters with your lawyer.

THE DEFENDANT: I did not want to come to court with this attorney.

THE COURT: I am going to have to ask you to not speak aloud until it is your turn to speak. You keep still at this time.

THE COURT (To the witness) Your answer should refer only to the defendant.

[Assistant public defender]: I would ask that his reference to anyone else be stricken.

THE COURT: The last reference to clothing worn by anyone else will be stricken.

Q (By [Assistant circuit attorney]) The defendant was dressed how?

A Bib overalls and wearing gloves.

[Assistant public defender]: If the Court would not mind, I could not see where the subject was taken into custody.

A. Right in the rear of the store, the very southeast corner.

[Assistant public defender]: In that back area that sticks out?

A The east wall in the southeast corner.

THE DEFENDANT: He is lying again.

THE COURT: The Court has advised you, Mr. Reynolds, not to speak outloud during court proceedings.

THE DEFENDANT: You are telling me not to speak outloud and you are letting them tell lies.

THE COURT: You continue to take down anything the defendant says. The court will be in recess until tomorrow morning at nine o'clock." [1]

When Officer Berberich resumed his testimony after a recess, he identified appellant

1. At the beginning of the trial and after the court read MAI 1.02, and at different times during the trial, the appellant indicated his dissatisfaction with his counsel—the public defender. He desired to have paid counsel of his choice, but after lengthy colloquies the court overruled his oral and written requests to discharge counsel because the cause had been set before and appellant had several months to obtain other counsel. A certain epithet was made by appellant. Appellant during trial also moved to disqualify the court, which was also overruled.

After the trial incident quoted above, and when Officer Berberich resumed the stand and identified the appellant as being in the store, wearing bib overalls and gloves, and as the witness was being excused, appellant again made a certain epithet directed to Officer Berberich. The court then discussed with both counsel the possibility of removing appellant from the courtroom or gagging him. Finally, at the suggestion of defense counsel, an investigator in the public defender's office discussed "this problem with the defendant." After that, no further remarks were made by the appellant.

as one of the persons found in the store near the "produce room, storage room," as did Officer Durney. Officer Berberich also described that near the check-out counter "[t]here were three plastic Glad bags, trash can bags, full of cigarettes." Near the liquor cabinet the ". . . lock was pried open and broken away." Officer Daniel Day, of the Evidence Technician Unit, who came to the scene, found and seized three padlocks "laying on the floor," "a chisel lying on the ground" and a tire iron "in the front area, inside the front door."

That evening, the manager was called to the store, and he also saw "three bags on the floor filled with cigarette cartons," and the lock broken off the liquor security cage.

On the morning of the second day of trial, the circuit attorney moved for leave to file an amendment by interlineation to its information charging that the appellant was "acting with another." Defense counsel objected on the ground that four witnesses had already testified (the assistant manager, Mr. McCann, Mr. Alt and the manager),

> ". . . and those witnesses have been excused and the defense attorneys feels [sic] that this is a prejudicial amendment on behalf of the defendant because in changing the charge to read 'acting with another' the defendant is at this point unable to question those witnesses who have previously testified about the actions of those other persons, other than William Reynolds, who allegedly were involved in this offense. I think that deprives him to that extent of confronting the witnesses as to what they saw or heard in respect to the actions of the other persons involved."

The court, however, overruled the objection and granted the state leave to file the amendment by interlineation.

The defendant did not testify upon advice of his attorney. Instructions were given,

including an instruction that all persons who knowingly act together with a common purpose are guilty of an offense. Arguments were had and the jury retired. The jury found the appellant guilty.

After the motion for new trial was overruled, which did not include any objection to the comment by the court, and allocution given, the defendant was sentenced to six years in the department of corrections.

On this appeal, appellant contends that the trial court (1) committed plain error ". . . when, in the presence of the jury, it referred to the opportunity which defendant would later have to testify because such statement constituted a comment on defendant's constitutional right to remain silent . . ." and (2) erred ". . . in granting the State leave to file an amendment to its information midway through the trial . . . because such amendment caused prejudice to defendant's case."

As to his first point, appellant relies on *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *State v. Gray*, 503 S.W.2d 457 (Mo.App.1973); *State v. Barker*, 399 S.W.2d 1 (Mo.1966); *Chapman v. State of California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); and *State v. Hutchinson*, 458 S.W.2d 553 (Mo.banc 1970).

■ We consider the first point raised by appellant. Even though this issue was not preserved for review, we are convinced that there was no "plain error" and that there was not, under the proper legal test, an impermissible comment by the trial court on the appellant's failure to testify.

■ It is, of course, now well settled that a "comment" on the failure of the accused to testify either by the trial court or the state violates the Fifth Amendment privilege against self-incrimination[2] as applicable to the states. *Griffin v. California*, supra, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d

---

2. Section 546.270, RSMo 1969, provides in part: "If the accused *shall not avail* himself or herself of his or her right to testify . . ., it shall not be construed to affect the innocence or guilt of the accused, . . . nor be referred to by any attorney in the case. . . ." (Emphasis added.) See also Rule 26.08.

106 [3]; *State v. Jenkins*, 516 S.W.2d 522 (Mo. App.1974). But under the tests laid down in this state, there is no constitutional or statutory violation of this principle unless there can be said to be a *direct* and *certain* reference to the failure of the accused to testify. *State v. Hutchinson*, supra, 458 S.W.2d at 555; *State v. Jenkins*, supra, 516 S.W.2d at 528. Critical to the issue of whether there is a prohibition against an impermissible comment are the words "defendant" or "accused" and "testify." *State v. McNeal*, 517 S.W.2d 187, 188 (Mo.App. 1974); *State v. Shields*, 391 S.W.2d 909, 912 (Mo.1965), cert. den., 382 U.S. 966, 86 S.Ct. 457, 15 L.Ed.2d 369; *State v. Gray*, supra, 503 S.W.2d at 462; see cases collected in *State v. Baker*, 439 S.W.2d 515, 516 (Mo. 1969), and *State v. Morgan*, 444 S.W.2d 490, 493 (Mo.1969).

Under the circumstances of this case, we find (1) no plain error in this regard, see *State v. Howard*, No. 35,998 (Mo.App.St.L. Dist., November 18, 1975), and (2) that the remarks of the trial court did not, under the applicable tests, constitute an impermissible comment on the failure of the defendant to testify.

 As in all other matters, this case must be decided on its own peculiar and unique facts. Throughout the trial, the appellant was dissatisfied with his court-appointed attorney, and perhaps with the trial court. Throughout the trial the appellant made certain remarks which led the trial court to consider the possibility of removing him from the courtroom or gagging him. See *State of Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). At the point where Officer Berberich was testifying, the trial court made the comment, "I am going to have to ask you to not speak aloud until it is your turn to speak. . ." This remark was not a direct and certain reference to the failure of the accused to

testify, and hence did not violate the rights of the appellant.

*State v. Gray*, supra, is clearly distinguishable. There, the court directed a question to the defendant: "Will you be sworn, sir; are you going to testify?" The defendant replied in the negative. We held that this was an impermissible comment and came within the doctrine of "plain error." Rule 27.20(c). *Gray* is not dispositive of this case. Here, there was no direct and certain reference to the failure to testify, and, in the context of the whole case, we cannot say that there was an impermissible comment nor "plain error."

 As to appellant's second point, we cannot say that the court erred in permitting an amendment to the information on the second day of trial. The appellant concedes that an additional or different offense was not charged by the amendment but urges that there was prejudice to the defendant by reason of the amendment to the information. The general principle is that an amendment to the information is permissible as long as no additional or different offense is charged and there is no prejudice to the defendant by reason of the amendment. *State v. Mallory*, 336 S.W.2d 383, 385 (Mo.1960); § 545.290, Rule 24.02. Rule 24.02 provides that "[t]he court may permit an information to be amended or an information to be substituted for an indictment at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."

We cannot conclude that any substantial rights of the defendant were infringed under the circumstances here. The witnesses who testified at the time the amendment was made were persons who testified as to the discovery of the offense and the physical surroundings. As to one witness at least, defense counsel brought out the fact

---

3. The Supreme Court of the United States in *Chapman v. State of California*, supra, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, refused to adopt an absolute rule which would require the automatic reversal for every violation of a federal constitutional right, such as a comment on the failure of the defendant to testify.

**498**

that there were more individuals involved other than the defendant.

Furthermore, there is authority for allowing an amendment such as this during the trial. *State v. West*, 484 S.W.2d 191, 195 (Mo.1972).

We have read the entire transcript, the briefs and authorities relied upon by the parties, and we are convinced that the points relied upon on this present appeal are without merit and that, based upon the points relied upon, there is no prejudicial error. We have further reviewed the authorities relied upon by the appellant and find them not to be controlling or dispositive of the issues presented on this appeal. We therefore affirm the judgment of conviction.

The judgment is affirmed.

KELLY and GUNN, JJ., concur.