**STATE of Missouri, Plaintiff-Respondent,**

v.

**Firman Bill GRAY, Defendant-Appellant.**

**No. 36489.**

Missouri Court of Appeals,
St. Louis District,
Division One.

Jan. 18, 1977.

Motion for Rehearing or Transfer
Denied March 15, 1977.

Application to Transfer Denied
May 10, 1977.

Richard H. Sindel, Asst. Public Defender, Clayton, for defendant-appellant.

John C. Danforth, Atty. Gen., David L. Baylard, Preston Dean, Asst. Attys. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., George R. Westfall, Asst. Pros. Atty., Clayton, for plaintiff-respondent.

DOWD, Judge.

Defendant appeals from his convictions of robbery in the first degree by means of a dangerous and deadly weapon, § 560.135 RSMo 1969, and attempted robbery in the first degree by means of a dangerous and deadly weapon, § 556.150 RSMo 1969. Defendant was sentenced to 25 years impris-

onment on the former count, 5 years imprisonment on the latter count. The sentences were to be served consecutively.

Defendant's convictions followed upon a new trial mandated by this court in *State v. Gray*, 503 S.W.2d 457 (Mo.App.1973). The evidence presented at retrial supporting the convictions may be briefly stated. In the early morning hours of January 8, 1972, Robert Hitchcock and Frankie Bush heard a gunshot and were then approached by two black men of different heights on the parking lot of Yocovelli's Restaurant. The taller of the two men asked the victims for their wallets, and Bush handed the man his wallet. When Hitchcock hesitated, the taller man shot Hitchcock in the hand. The two robbers then fled. Bush retrieved Hitchcock's wallet from the parking lot and observed a white 1962 Ford convertible drive away. Hitchcock, who had run inside the telephone the police, reported these facts to the police.

A short time after the robbery, the police stopped the white 1962 Ford convertible in which defendant rode. The automobile was searched. Later the same morning, defendant appeared in two line-ups and was viewed by both Bush and Hitchcock. After the second line-up, the victims agreed that defendant was the smaller man who had participated in the robbery. Both Hitchcock and Bush identified defendant at trial.

■ Defendant sets forth three points relied on in his brief. The first two points, challenging the admissibility of evidence found in the 1962 Ford convertible and challenging the propriety of the out-of-court line-up identification of defendant, have been previously reviewed by this court and have been decided adversely to defendant. *State v. Gray, supra.* We do not reach the merits of defendant's contentions under the rule of *State ex rel. Mercantile National Bank at Dallas v. Rooney*, 402 S.W.2d 354, 361[6] (Mo. banc 1966).

Defendant's third point on appeal is that the trial court erred in refusing three jury instructions proffered by defendant relating to identification evidence "in that ultimately the whole case rested on the quality of the identification, therefore, the requested instructions were based on the evidence, were relevant, were necessary and were proper." Defendant argues that the following three instructions should have been given by the trial court:

"*Instruction No. A* (Not MAI–CR–Offered by Defendant) Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

*Instruction No. B* (Not MAI–CR–Offered by Defendant) You are further instructed that testimony tending to prove identity is to be scrutinized with extreme care. In considering such testimony you must take into account the opportunity of the witness to observe, the description given by the witness, the positiveness of the identification at the line-up and the positiveness of the identification at trial.

*Instruction No. C* (Not in MAI–CR–Offered by Defendant) Where the prosecution has offered identification testimony, i. e., the testimony of an eyewitness that he saw the Defendant commit the act charged, such testimony should be received with caution. An identification by a stranger is not as trustworthy as an identification by an acquaintance. Mistaken identification is not uncommon. The witness' opportunity to observe the perpetrator during the commission of the act charged is of great importance in determining the credibility of his identification. The testimony of the witness that he is positive of his identification may be considered by you, but does not relieve you of the duty to carefully consider his identification testimony and to reject it if you find that it is not reliable. Careful scrutiny of such testimony is e[s]pecially important whe[n], as in this case, it is the only testimony offered by the prosecution to connect the Defendant with the act charged."

■■ We believe that the proffered instructions were tantamount to instructions

on the credibility of testimony. As such, the trial court did not err in refusing to give the instructions. The trial court did give the approved criminal instruction governing the weight and value of evidence and the believability of witnesses, MAI–CR Number 2.01.[1] The approved instruction authorizes the jury to consider the witness' demeanor, his "ability and opportunity to observe and remember any matter about which he testifies," any prejudice of the witness, the reasonableness of the witness' testimony in light of other evidence, and "any other matter" tending to affect the truthfulness of testimony. MAI–CR No. 2.01. No other or additional instruction on the believability of a witness or the effect, weight, or value of a witness' testimony should be given. MAI–CR No. 2.01, Notes on Use (2); *State v. Lang*, 515 S.W.2d 507, 510–511[4] (Mo.1974).

The judgment is affirmed.

WEIER, P. J., and CLEMENS, J., concur.

---

1. As required, the trial court read MAI–CR No. 2.01 to the jury after it was sworn and gave the written instruction to the jury with the other written instructions at the conclusion of the case. MAI–CR No. 2.01, Notes on Use (1).