STATE of Missouri, Respondent,

v.

Shane G. BRANNSON, III, Appellant.

No. 65766.

Supreme Court of Missouri,
En Banc.

Oct: 9, 1984.

Rehearing Denied Nov. 20, 1984.

James W. Fletcher, Public Defender, Sean D. O'Brien, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

RENDLEN, Chief Justice.

Defendant Brannson, convicted by a jury on two counts of stealing by deceit, § 570.-030, RSMo 1978,[1] was sentenced as a persistent offender, § 558.016, to consecutive terms of four years imprisonment on each count. Upon application of the State the cause was ordered transferred after opinion in the Court of Appeals, Western District, *see* Mo. Const. art. V, § 10 *and* Rule 83.03. The sole issue is whether the prosecutor's remarks, concerning defendant's "attempts" to testify, occurring as objection to defendant's *pro se* cross-examination of the State's witnesses, resulted in manifest injustice. No objection was made by defendant to such remarks nor was trial court relief requested. Affirmed.

The information charged defendant with two counts of stealing more than $150 by deceit.[2] Represented at trial by two appointed counsel, defendant nonetheless

1. All subsequent statutory references are to RSMo 1978 unless otherwise noted.

2. Count I: that the defendant charged to the Crown III Oil Company of Toronto, Canada, the room rent, meals and telephone calls at the Hyatt Regency Hotel when he knew the company did not exist and would not pay the charges for the services appropriated. Count II: that the defendant charged to the Crown III Oil Company of Toronto, Canada, the room rent, meals and telephone calls at the Granada Royale Hometel when he knew the company did not exist and would not pay the charges for the services appropriated. The Hyatt Regency bill totaled $1,126.36; the charges at the Granada Royale totaled $3,045.51.

chose to personally conduct his defense by cross-examination of the State's witnesses unassisted. He now contends that certain objections by the prosecutor to the *pro se* cross-examination constituted comments on his *failure to testify* and accordingly violated the Fifth Amendment right against compelled self-incrimination. Defendant refers to certain portions of the *pro se* examination of three prosecution witnesses: Don Friedman, general manager for the Granada Royale; Harold Solomon, manager of that hostelry, and Joel Yukon, comptroller of the Hyatt Regency.

In the theory of his defense, defendant sought to prove that a Canadian business to which he charged the hotel bills was not fictitious but had moved from the address given the Kansas City hotels for billings. He also sought to establish that while in Kansas City he had conducted business with and for the company and, by so doing, demonstrate that he had no intent to deceive or defraud the hotels by listing a non-existent company for billing. Defendant's *pro se* cross-examination of the three State's witnesses concerned phone bills and letters which he contends evidenced the existence of that legitimate Canadian business. Defendant attempted to show through his examination that the phone calls were made to London (Ontario or England?) and Canada, that a credit letter was sent to one of the hotels from Canada, and that the hotel authorities should have concluded from their phone calls for collection that the company had moved. Proof of these matters was critical to his defense and the manner of defendant's cross-examination suggests that the matters could not otherwise be proved. It seems apparent that he attempted to testify to such "facts" under the guise of cross-examination.

The complained of objections, recited below, were preceded by a colloquy at the bench between the prosecutor and the court:

MS. STARKE [Prosecutor]: I assume that the next question Mr. Brannson is going to ask is of a leading-type question, getting into evidence as Mr. Brannson wants, where this phone bill is from.

I feel that this is approaching the point that this defendant is testifying and I'll object to this because I think if he's going to be testifying and getting things into evidence, he should be subjected to cross-examination.

THE COURT: We'll have to cross that bridge when we get there. He's entitled to cross-examine the witness and that means he can ask leading questions.

The questioning of Mr. Friedman, who was called to authenticate the charges incurred at the Granada Royale, then continued. The subject under discussion was long distance telephone calls charged by the defendant:

Q. [By Defendant Brannson]: Mr. Friedman, the number you read to the Court, starting with the digit, 44, did you know that was a London exchange?

MR. STARKE: Objection, Your Honor, *this defendant is testifying in this case without taking the stand so that I can cross-examine him.*

THE COURT: The objection will be overruled.

\*    \*    \*    \*    \*    \*

Defendant Brannson then continued the questioning by attempting to go through the various phone bills and have the witness "pick out" those numbers called which were outside the United States. After sub-labeling Exhibit 76 into A and B, calls made outside the United States and calls made within the United States, from the witness's separation of the bills, defendant continued to "label" the exhibits:

DEFENDANT BRANNSON: We'd like to label as 76–C, as calls made to Canada.

MS. STARKE: Your Honor, I don't believe the witness testified to that stack. He has not testified to that. *Mr. Brannson is attempting to testify to that.*

THE COURT: That objection will be sustained.

Q. [By Defendant Brannson]: Mr. Friedman, would you tell the Court on those group of calls, what the area is?

A. 416.

Q. Could you tell the Court what area code that is?

A. I don't know.

Q. If I told you it was Canada, you wouldn't know?

MS. STARKE: Objection, Your Honor. *The defendant is trying to testify again without taking the stand and being subjected to cross-examination.*

DEFENDANT BRANNSON: I apologize.

THE COURT: The objection will be sustained.

\*     \*     \*     \*     \*     \*

DEFENDANT BRANNSON: Your Honor, while this becomes a bit difficult, I'd like the Court's indulgence. I'd like to enter in as Defendant's Exhibit 77, an original—

MS. STARKE: Your Honor, *I'll object, if this defendant tries to be a witness to tell what that is.*

THE COURT: The objection is sustained.

DEFENDANT BRANNSON: This particular exhibit was sent to the Granada Hometel—

MS. STARKE: Objection, Your Honor. *He's trying to testify.*

THE COURT: The objection will be sustained.

The cross-examination of witness Solomon, manager of the Granada Royale, then induced this repartee:

Q. [By Defendant Brannson]: But you became aware of the defendant at the hotel two days after he arrived, yet you never saw him?

A. No. I don't see all the people that check into the hotel.

Q. Of course not, I understand. It's probably full.

MS. STARKE: Your Honor, *I'll object to this man testifying* and commenting on the evidence.

THE COURT: The objection will be sustained.

\*     \*     \*     \*     \*     \*

Q. [By Defendant Brannson]: Mr. Solomon, during the defendant's stay at the hotel, the entire period of 21 days or whatever time he was there, was there any attempts made to visit with the Defendant to ask him information on Crown III or himself?

A. No, there was not, to my knowledge.

Q. Then you're telling the Court that you were completely satisfied when the defendant checked in?

MS. STARKE: Objection, Your Honor. *That's not in the form of a question. He's trying to testify.*

THE COURT: The objection will be overruled.

\*     \*     \*     \*     \*     \*

Q. [By Defendant Brannson]: This is a letter from a company in Canada—would—

MS. STARKE: Your Honor, I'll object. *The defendant is again trying to testify.*

THE COURT: The objection will be sustained.

The final episode occurred during the cross-examination of witness Yukon, comptroller of the Hyatt Regency:

Q. [By Defendant Brannson]: Do you think the company existed?

A. That, I could not say, sir.

Q. From your phoning that number, what would you gather from your expertise? Now, this only from the position that you hold in the innkeeper's business. Would you gather that the company moved?

MS. STARKE: Your Honor, I'll object to this. This is speculation on the part of this defendant and *he's trying to testify without taking the stand, being subjected to cross-examination.*

DEFENDANT BRANNSON: This line of questioning only is directed toward his position as an innkeeper, as he has probably done these inquiries before on some level.

THE COURT: The objection that it's speculative will be sustained.

The objections by the prosecutor to the *pro se* cross-examination came in without objection by the defendant. There was no

request by defendant *pro se*, or by his appointed counsel,[3] for any intervention by the trial court, nor for any correction or other redress. Defendant asks our review for plain error under Rule 29.12(b).

This is not a case in which a defendant sits mute at counsel table and the prosecution points up the defendant's failure to testify. *See State v. Lindsey*, 578 S.W.2d 903 (Mo. banc 1979); *State v. Howard*, 540 S.W.2d 86 (Mo. banc 1976); *State v. Reed*, 583 S.W.2d 531 (Mo.App.1979); *State v. Gray*, 503 S.W.2d 457 (Mo.App.1973). On the contrary, this is a case in which defendant undertook his own defense and during his protracted trial participation effectively injected himself into the mainstream of the evidence. He attempted not only to argue the various points in issue but in the presentation of evidence through his lengthy interrogation of the State's witnesses, sought repeatedly to state as facts items not otherwise in evidence and in certain instances to establish as fact matters of which the witnesses had no knowledge. Clearly these were points which defendant considered vital to his case and on which he was apparently otherwise unable or unwilling to obtain proof. In effect he was attempting in that manner to testify to these otherwise unproved "facts." The objections of the prosecutor to those attempts of defendant, some of which were successful, some not, accurately pointed out what defendant was trying to do—and lodged the objections in those terms (*e.g.,* defendant "is attempting to testify to that." "He's trying to testify." "Defendant is again trying to testify."). The objections went to the form of the questions and in several instances were sustained. As previously noted this is not a case in which defendant

failed or refused to testify and in which comment was made on that fact. Indeed it is the opposite. Defendant sought in the jury's presence to state as evidence matters not in proof and in so doing he sought to testify without having been sworn and the prosecutor objected for that reason in those terms.

In this connection it should be remembered that cases in which laymen conduct their own trials often present difficult procedural problems for the opponent as well as the trial court. What degree of latitude must the trial court extend in allowing the layman to stray from the rules of evidence and established trial procedure? The court and prosecutor were not unaware that when a party, here defendant, is stating as fact items not otherwise in evidence it carries the ring of authenticity for here is the man who "speaks with authority" for is he not speaking from his own experience? When he "told" the witness (and the jury) that the area code was a London or Canada exchange, that the stack of phone bills (76-C) were "calls made to Canada," the defendant's "attempted" testimony in the form of statement to the court or woven into his questions warranted credence, for he was the person who had special knowledge of those facts. Clearly he wanted the jury to accept as true the asserted "facts."

In the face of all this, the objections were made and in many instances sustained. While it might be argued that leading questions should have been more liberally allowed, under the circumstances of this case we find no "manifest injustice" resulted from the objections or from the trial court's rulings thereon.[4]

**3.** Defendant apparently relinquished the waiver of counsel at the conclusion of the prosecution case and restored the conduct of the trial to appointed counsel for the presentation of the defense evidence.

**4.** In *United States v. Mahanna,* 461 F.2d 1110, 1114 (8th Cir.1972), the Eighth Circuit adopted the test of the Fifth Circuit, announced in *Davis v. United States,* 357 F.2d 438, 441 (5th Cir.), *cert. denied* 385 U.S. 927, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966), that

The facts and circumstances of each case must be carefully analyzed to determine 'whether the language used was manifestly intended or *was of such character* that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' [citations omitted.] (Emphasis added.)

This Court follows a similar test, *see State v. Frankoviglia,* 514 S.W.2d 536 (Mo.1974), and we cannot hold that the objections constitute reference to defendant's failure to testify.

The orthodox standard prohibiting comment by the prosecution on the failure of the accused to testify is applicable when the accused is silent, but when the accused conducts his own defense and attempts—innocently or otherwise—to testify or to inject facts not in evidence into the case, a different problem arises. For then it is defendant's "attempt to testify" to which objection is made. See 38 Temp.L.Q. 102 (1964). Whether such conduct on the part of a *pro se* defendant waives the privilege as to "no comment" [5] need not be reached in the instant case because we hold the prosecutor's objections lodged with the court did not constitute direct and unequivocal reference made to the jury intending to draw attention to the defendant's *failure* to testify.[6] Instead the objections were directed to his "attempts to testify." No plain error affecting substantial rights has been shown in the light of the circumstances of this case.

The judgment of the trial court is affirmed.

GUNN, BILLINGS, BLACKMAR and DONNELLY, JJ., concur.

HIGGINS, J., dissents in separate opinion filed.

WELLIVER, J., dissents and concurs in separate dissenting opinion of HIGGINS, J.

HIGGINS, Judge, dissenting.

I am reluctant to assign error in the conduct of a trial where the defendant can ascribe no error that the trial court refused relief, because none was requested. Nevertheless, in my opinion, the incidents described by the majority caused manifest injustice to the accused in this case and warrant plain error relief for reasons taken from the opinion of the Honorable Charles Shangler in the court of appeals.

An attorney in the case may not comment on the failure of an accused to testify in the trial under the constitutional principle that such a comment violates the guarantee to an accused to be free from compelled self-incrimination. Fifth Amendment to the United States Constitution; Mo. Const. Art. I, § 19. Section 546.270, RSMo 1978, which disallows any reference by an attorney in the case to the election of an accused not to testify, enacts that constitutional principle. Rule 27.05(a) reiterates that fundamental public policy.

Missouri cases hold that the principle proscribes only "direct and certain references to failure of the accused to testify." *State v. Hutchinson*, 458 S.W.2d 553, 555[3] (Mo. banc 1970); *State v. Inscore*, 592 S.W.2d 809, 812–813[8] (Mo. banc 1980). Thus, comment by the prosecutor that the defendant offered no evidence insinuates only indirectly the failure to testify, and so does not violate the constitutional prohibition. *State v. Pugh*, 649 S.W.2d 480, 482[2] (Mo.App.1983). Also, a hearsay objection by the prosecutor in terms of: "The defendant is attempting to testify without taking the stand" where the question on cross-examination was propounded by professional counsel was held to be only an indirect reference to the silence of the defendant, and so was cured by the prompt instruction of the court that the jury disregard the remark. *State v. Martin*, 624 S.W.2d 879, 883[13–15] (Mo.App.1981). On the other hand, an inquiry by the court to the defendant before the jury: "Will you be sworn, sir; are you going to testify?"—where the defendant refused the stand—

---

5. Each case turns on its own facts. See, e.g. *Schultz v. Yeager*, 403 F.2d 639 (3d Cir.1968) (no waiver); *State v. Curtiss*, 330 F.2d 278 (2d Cir. 1964) (no waiver); *Redfield v. United States*, 315 F.2d 76 (9th Cir.1963) *cert. denied* 369 U.S. 803, 82 S.Ct. 642, 7 L.Ed.2d 550 (1962) (waiver); *Smith v. United States*, 234 F.2d 385 (5th Cir. 1956) (waiver).

6. The holding in this case that the objections focused on the improper testimonial nature of defendant's *pro se* cross-examination and not on his *failure* to testify, departs from the analysis of *State v. Dick*, 636 S.W.2d 425 (Mo.App.1982), and *State v. Martin*, 624 S.W.2d 879 (Mo.App. 1981), because in those cases, unlike the instant case, defendants were not injecting testimony. The analysis in *State v. Dick, supra*, and *State v. Martin, supra*, depended on determination whether the comments were direct or indirect references to the failure to testify.

was a direct comment by the trial judge on the failure of the accused to testify and so violated the constitutional principle, the statute and the rule. *State v. Gray*, 503 S.W.2d 457, 461[7] (Mo.App.1973). Thus, also, comments such as: "There is not a single witness who took the stand who is on trial" [*State v. Reed*, 583 S.W.2d 531, 533[2] (Mo.App.1979)]; "I don't know what this boy [defendant] says. There is no evidence of any type by him in this case." [*State v. Lindner*, 282 S.W.2d 547, 550[2–4] (Mo.1955)]; "Mr. Lindsey doesn't have to go forward with any evidence if he doesn't wish to. He doesn't have to take the stand if he doesn't want to." [*State v. Lindsey*, 578 S.W.2d 903 (Mo. banc 1979)]; and the remark by the court to the defendant: "Now you were given the opportunity to take the stand. You're going to keep quiet through these proceedings or you're going to have to leave the courtroom." [*State v. Howard*, 540 S.W.2d 86, 87 (Mo. banc 1976)] were held to be direct references to the failure of the defendant to take the stand, and so, reversible error.

In the assessment whether the comment was a direct or indirect reference, the critical terms are accused and testify: the test is whether the jury's attention was drawn to the accused's absence from the witness stand. *State v. Frankoviglia*, 514 S.W.2d 536, 541[5] (Mo.1974).

The comments by the prosecutor—iterated and reiterated in one form or another nine times—"This defendant is testifying in this case without taking the stand so that I can cross-examine him"—were direct references to the failure of the accused to testify in the trial. The only question is whether the cross-examination by the *pro se* advocate was in effect disguised testimony so that the defendant, although unsworn and so not subject to cross-examination, nevertheless gave voluntary evidence.

The privilege against compulsory self-incrimination is personal to the accused and may be waived. The conduct of an attorney who performs on behalf of the accused may result in a waiver—as where counsel in the trial for stratagem or other purpose

calls attention to the silence of the client. *State v. Tiedt*, 360 Mo. 594, 229 S.W.2d 582, 587[8–11] (1950). A parity of logic requires that an accused who acts *pro se* may waive the privilege by statements tantamount to testimony or by an acknowledgement before the jury that he has elected not to testify. That is the sense of the federal decisions on the question.

The prosecution interpolates the federal authorities to hold that a *pro se* defendant who persistently presents unsworn "testimony" under the guise of cross-examination waives the privilege against self-incrimination. The rationale of these authorities, an analysis discloses, encompasses more than cross-examination and applies the principle to any conduct which manifests a purpose to insinuate to the jury matters of fact, defense, or proofs by unsworn statements—whether in cross-examination [*United States v. Mahanna*, 461 F.2d 1110, 1113[2] (8th Cir.1972)], opening statement [*United States v. Lacob*, 416 F.2d 756, 760[4] (7th Cir.1969)], summation argument [*United States ex rel. Miller v. Follette*, 397 F.2d 363, 366 (2d Cir.1968)], or asides to the jury [*United States v. Kaufman*, 429 F.2d 240, 246[10] (2d Cir. 1970)].

Thus, as in *Redfield v. United States*, 315 F.2d 76 (9th Cir.1963), the defendant acted *pro se* and in the course of cross-examination of prosecution witnesses, [l.c. 80[3]] "persistently testified, though not under oath ... while purporting to act in the role of counsel, and in flagrant and contemptuous disregard of repeated admonitions and orders from the bench not to testify without first being sworn." In that context, the official suggestion that the defendant take the witness stand to accomplish that testimonial purpose was not an infringement of the privilege against self-incrimination, since by that time the defendant Redfield, by conduct tantamount to voluntary testimony, had already waived the privilege. That does not describe, by temper or analogy, the conduct and events which induced the remarks of the prosecutor in the case on review. There was no

warning by the court to the *pro se* advocate Brannson as to any impropriety of the form of the cross-examination, no order issued, nor was any disobeyed. The prosecutor lodged nine separate objections to *pro se* cross-examination questions. The orders of the court were laconic and without admonition or other color: twice the court ruled: "The objection will be overruled," and seven times: "The objection will be sustained." Once, the court embellished that decision with comment: "The objection that it's speculative will be sustained."

The conduct of the *pro se* defendant Brannson was neither obdurate nor disobedient in the face of admonition, correction or direction by the court, because there was none given. The only question is whether the record discloses that the purpose or effect of the Brannson cross-examinations was to assert testimonial fact in the guise of that advocacy function.

The prosecution presented twelve witnesses. Brannson cross-examined them all, save one. The objections by the prosecutor went to questions posed to three of the witnesses. There is no contention, therefore, that there was a pervasive purpose to use the *pro se* status as a ploy to insinuate a defense to the jury. The prosecutor made nine separate general objections to the *pro se* examinations of the three witnesses—some of them not even articulated, but still incipient. The comment: "This Defendant is testifying in this case without taking the stand so that I can cross-examine him" accompanied each objection. The sense of each objection was that the question assumed a fact not in evidence. The cross-examination questions, however, were not all vulnerable [the court overruled two of them], and those which were fallible were faulty for a variety of reasons. Thus, one inquiry to witness Solomon was sustained as a comment on the evidence, and an inquiry to witness Yukon was sustained on the ground it was speculative. Thus, also, these actions of the court belied the basis of objection to four of the *pro se* cross-examination questions. The proper objection to the remainder of them was

simply that each of the questions assumed a fact not in evidence. That on the rule that a question based upon the assumption that a certain fact has been proven, when it has not been, is improper. *Schwane v. Kroger Company,* 480 S.W.2d 113, 116[1–3] (Mo.App.1972); 98 C.J.S., Witnesses § 341c (1957).

To put a question on cross-examination which assumes a fact not in evidence, in any event, is a vagary of courtroom practice to which even the most skilled professional advocate occasionally succumbs. It is the kind of error a trial court tolerates and corrects, and unless made with the purpose to self-serve, gives no cause for comment by counsel in opposition or by the court. It is by the very nature inevitable, of course, that a jury will understand any cross-examination questions by a *pro se* advocate in a criminal case as assertions of defense, simply because the interrogator is also the accused on trial. In the correction of a vagrant *pro se* advocate practice, there must be care that constitutional prerogatives be given due deference [*United States v. Warner,* 428 F.2d 730 (8th Cir. 1970), l.c. 739]:

> It is true, that a judge must be able to limit counsel to proper questioning and argument whether he be trained counsel or pro se and a prosecuting attorney should have latitude to indicate to the jury what constitutes evidence and what does not as he would if his adversary were trained counsel. On the other hand constitutional rights should be paramount and if at all possible judge and prosecutor should be particularly careful not to violate such constitutional rights in the case of a pro se defendant. In most cases judges and prosecutors can adequately perform their tasks without commenting on a defendant's failure to testify. A judge can warn a pro se defendant as to his excesses and out of the jury's presence perhaps warn him of the possible loss and waiver of Fifth Amendment rights which may be attendant upon failure to follow the judge's instructions. A prosecutor can indicate that a

defendant's comments are not evidence as he would state that an attorney's comments are not evidence without commenting on pro se defendant's failure to testify.

The cross-examination of the eleven witnesses by *pro se* defendant Brannson was orderly, deferential and for the most part skillful. The several questions which assumed facts not in evidence were errors innocent of any undue testimonial design, and gave the trial court no concern.

There is no reason to suppose that an objection by the prosecutor [as *United States v. Warner, supra,* recommends] that the questions assumed facts not in evidence would not have sufficed, nor to suppose that a request by the prosecutor for the court to warn the *pro se* defendant of the waiver implications of repetition would not have allayed the cause of objection. The prosecutor, rather [after expressing concern to the bench that the *pro se* defendant was about to ask leading questions of the witness—and the response by the court that such questions were legitimate on cross-examination], immediately, avidly and insistently launched into the objection and comment that "this defendant is testifying in this case without taking the stand." That objection, the first of the series, was overruled [as it appears because the question was merely leading and not an assumption of fact not in evidence] so that the comment—a direct reference—as to the failure of the defendant to testify was altogether gratuitous and without provocation. That suffices to reverse this conviction.

The mandate of section 546.270 and Rule 27.05(a) is peremptory: it declares the constitutional principle that the failure of a defendant to testify shall not prejudice the accused nor give occasion for comment to any attorney in the case. *State v. Shuls,* 329 Mo. 245, 44 S.W.2d 94, 96[8] (1931). Their purpose is to keep from a jury any reference to the constitutional right of a defendant to be free from compelled self-incrimination. *State v. Barker,* 399 S.W.2d 1, 3[1–2] (Mo.1966). Here, the first objec-

tion to cross-examination question by the *pro se* defendant: "This Defendant is testifying in this case without taking the stand so that I can cross-examine him"—shorn of euphemism—states the bald equivalent: "This Defendant chooses not to take the stand' to testify." That comment was unprovoked and gratuitous, and so was not induced by a waiver.

The infringement of the constitutional principle by a direct and certain reference that the defendant does not choose to testify denies a fair trial, and so is not likely harmless. *State v. Reed,* 583 S.W.2d 531, 533[3, 4] (Mo.App.1979); *State v. Lindsey,* 578 S.W.2d 903, 904[2, 3] (Mo. banc 1979); *State v. Gray,* 503 S.W.2d 457, 463 (Mo. App.1973). It is a manifest injustice which is subject to review and redress as plain error under Rule 29.12. *State v. Reed, supra, State v. Gray, supra; State v. Howard,* 540 S.W.2d 86, 87[2] (Mo. banc 1976).

Accordingly, I would reverse the judgment and remand the cause for a new trial.